[Civ. No. 20304.  First Dist., Div. Three.  Dec. 12, 1962.]

CROFOOT LUMBER, INC., Plaintiff and Respondent, v.
JACK LEWIS et al., Defendants and Appellants.

Leo M. Cook, Morris M. Grupp and Rawles, Nelson &
Golden for Defendants and Appellants.

Spurr & Brunner, Sullivan, Roche, Johnson & Farraher, Theodore A. Kolb and Albert Bianchi for Plaintiff and Respondent.

DRAPER, P. J.—This is an action for damages for wrongful removal of timber from plaintiff's land. It has a long history. In 1949, plaintiff's predecessor in interest contracted to sell to defendant Thompson and one Edsell, timber on the predecessor's land. In 1954, plaintiff brought an action to declare rescission of the contract for breach by Thompson and Edsell. Appellant Lewis acquired Edsell's interest, and transferred a share thereof to appellant Rawles. In 1956, Lewis, Rawles and Thompson, hereinafter called the Lewis group, transferred their rights to Moores, Smith and others, hereinafter called the Moores group, who commenced logging off the timber, and the present action was filed. Judgment declaring rescission of the Thompson-Edsell contract was entered, and was affirmed on appeal (*Crofoot Lumber, Inc.* v. *Thompson,* 163 Cal.App.2d 324 [329 P.2d 302]). Thereafter the present action was tried, and resulted in judgment for plaintiff for the "stumpage value" of timber removed, in the sum of $105,945. On appeal by plaintiff, it was held that an inadequate measure of damages had been applied, the judgment was reversed and the case remanded for trial of the issue of damages. On retrial judgment was entered for $169,863, with interest to August 21, 1961, in the sum of $62,127.44. Only defendants Lewis and Rawles now appeal from that judgment.

Appellants contend that the excess of the present judgment over the former one is the "profit" made in milling of the timber logged from plaintiff's land. They argue that only the Moores group, which realized this profit, should be thus penalized. Appellants, they say, are properly chargeable only with the stumpage, i. e., "the value of the timber as it stands uncut in the woods" (Webster's 3rd New Int'l. Dictionary).

This argument is based on some phrases of the opinion on the earlier appeal in this case (191 Cal.App.2d 238 [12 Cal. Rptr. 639]). That court did say that "damages should be measured by the amount of money received by the defendants for the property" (p. 247); referred to plaintiff's contention "that the (defendants) should not be allowed to keep their profit which was the result of their wrongful marketing of the trees as lumber" (p. 248); and said that limitation of recovery to stumpage "would permit the trespassers to profit from their wrong" (p. 250).

If the basis of the increased measure of damages was solely denial of profits wrongfully realized, there could be merit in this argument. It seems clear that the Lewis group of defendants did not directly participate in the milling of the timber and the resultant profits. But a careful reading of the decision of the Third District, with particular attention to the detailed review of the authorities on the measure of damages (pp. 248-250), reveals that this was not its basis. Far from looking solely to the defendants and the profit realized by some of them, the court actually looked to the detriment suffered by plaintiff. The conversion of the timber, in which the Lewis group was an active participant, deprived plaintiff of its right to log the land, mill the timber, and realize the full net value of the milled products. Thus it was the loss of plaintiff, and not the profit of some defendants, which was the foundation for the increased measure of damages directed by that court. This view becomes inescapable when it is realized that the judgment there appealed from was against all defendants, including the Lewis group, and that the judgment was reversed as to all defendants without any direction that retrial to determine damages upon the higher measure be limited to the Moores group.

Appellants also attack the findings, asserting that they cover issues other than that of damages, the only matter remanded for retrial. It is true that the present judgment restates the findings of the first trial on the merits. Obviously, this was done for the purpose of having all findings in a single document. Almost all findings on issues other than damages are in the exact language of those made after the first trial. The few which are paraphrased raise no new matter, and there is no conceivable prejudice to appellants. It is completely apparent that the second trial was had, and new findings made, solely on the issue of damages.

On April 16, 1962, appellants noticed their motion for leave to produce additional evidence in this court. We reserved decision upon this motion. The offered evidence is an agreement dated January 17, 1959, between plaintiff and defendant Hollow Tree Lumber Company, one of the Moores group. By it, plaintiff acknowledges receipt of $120,000, and agrees not to levy execution against Hollow Tree. Respondent does not deny that appellants learned of the agreement only after judgment, nor does it question appellants' promptness in making the motion upon such discovery. At oral argument,

plaintiff-respondent conceded due execution of the agreement and payment to it of $120,000 thereunder.

Respondent also concedes that this payment reduces the "claim" against defendants other than Hollow Tree (Code Civ. Proc., § 877). It argues, however, that the "claim" is the total amount of the judgment as of August 21, 1961, including the sum allowed as interest from June 1, 1956, to August 21, 1961. We cannot agree. ▮▮▮ It is true that interest, in conversion cases, is awarded as damages and that the principal amount, and necessarily the interest thereon, is not finally determined until judgment. But interest must necessarily be computed upon an amount of money withheld. When that money has in fact been paid, it obviously is not withheld, and to the extent of the payment cannot afford a basis for computation of interest.

The compensatory damages for the conversion of June 1, 1956, were $169,863. Interest thereon to January 17, 1959, the date of the payment by Hollow Tree, amounted to $31,278.42. If the $120,000 payment of January 17, 1959, be applied to the amount now determined to have been due on that date, it would have discharged this item of interest and have paid $88,721.58 of the compensatory damages, leaving $81,141.42 due on that date. Only this lesser amount should bear interest to date of judgment.

The reluctance of appellate courts to take evidence stems in part from the fact that they are not equipped for any appreciable foray into this field (3 Witkin, Cal. Proc. 2398). However, where the proffered evidence is wholly documentary, this objection is not so great (*id.* 2400). ▮▮▮ It is established that evidence may be taken to terminate litigation by affirmance, modification, or reversal with directions (*People v. Benford,* 53 Cal.2d 1, 6 [345 P.2d 928] ; and see *Stellman v. Stellman,* 119 Cal.App.2d 805 [260 P.2d 209] ).

▮▮▮ Admission of the agreement here offered will lead only to modification of the judgment. Fairness and equity require that an amount already paid not bear interest. We grant appellants' motion and accept the offered agreement for the purpose of modifying the judgment by reduction of its amount. In view of the admitted facts of execution and payment, no oral evidence need be taken.

We do not, however, accept appellants' contention that the existence of the agreement in some way indicates fraud or collusion which requires reversal. The agreement does not, on its face, indicate that it would have affected the view of

the trial court as to the nature or, save for the modification here made, the amount of the judgment. The agreement, made before the first judgment in this case, covers a large number of possibilities in the amount and nature of the then possible range of judgments. Extensive evidence would be required to determine its scope and effect, and the extent, if any, to which it prejudices appellants. To admit the agreement as a basis for these further arguments of appellants would be to ignore the restrictions upon the taking of evidence on appeal. Reasonable judicial administration requires that appellants be relegated to their equitable remedies if and when they can assert actual prejudice as a result of the agreement.

The judgment is modified by striking therefrom lines 25 and 26 of page 79 of the clerk's transcript on appeal, and by substituting therefor: "less, however, credit of $120,000 principal and interest paid January 17, 1959, reducing the principal amount due on that date to $81,141.42, with interest thereon at the legal rate from January 17, 1959 to August 21, 1961 in the amount of $14,736.22, or a total amount on this 21st day of August, 1961 of $95,877.64''.

As so modified, the judgment is affirmed. Costs are awarded to appellants.

Salsman, J., and Devine, J., concurred.

A petition for a rehearing was denied January 4, 1963, and appellants' petition for a hearing by the Supreme Court was denied February 6, 1963. Peek, J., did not participate therein.