[Civ. No. 3274. Third Appellate District.—May 20, 1927.]

A. J. PINE, Respondent, v. J. D. FRENCH et al., Appellants.

[1] CHATTEL MORTGAGES — NOTE AND MORTGAGE BY ONE OF TWO OWNERS — FUTURE ADVANCES — PARTNERSHIP — SUBSEQUENT PURCHASER—NOTICE—FINDING—JUDGMENTS—INTERESTS CHARGEABLE.— In an action to foreclose a chattel mortgage on a band of goats given by one of two former owners thereof to secure a promissory note of the mortgagor and future advances, a finding that advances were made by the plaintiff to the mort-

1. See 5 Cal. Jur. 56; 5 R. C. L. 413.

gagor and his co-owner as partners, and a judgment directing
the sale of the goats as though it was partnership property,
are not binding upon a subsequent purchaser of the goats,
where the latter had no knowledge of the transactions between
the plaintiff and the mortgagor and co-owner, and the recorded
instruments did not show a partnership between said mort-
gagor and said co-owner, although the immediate grantor of
said subsequent purchaser had notice of such transactions; and
under such circumstances, as against the subsequent purchaser,
the interest of the mortgagor only was chargeable.

[2] ID.—INDEBTEDNESS—VALUE OF PROPERTY—FINDING—EVIDENCE.—In
such action, the finding of the trial court that the value of the
property at the time it was redelivered to the subsequent pur-
chaser's immediate grantor by the mortgagor and his co-owner
was sufficient to cover the indebtedness to said immediate grantor
and, also, the indebtedness to the plaintiff, was supported by the
evidence.

(1) 30 Cyc., p. 497, n. 43, p. 591, n. 21.   (2) 4 C. J., p. 1201,
n. 44; 11 C. J., p. 725, n. 45.

APPEAL from a judgment of the Superior Court of
Tehama County. K. S. Mahon, Judge. Reversed.

The facts are stated in the opinion of the court.

James T. Matlock and M. J. Cheatham for Appellants.

W. A. Fish and W. P. Johnson for Respondent.

PLUMMER, J.—Plaintiff had judgment of foreclosure
of a chattel mortgage, dated the twenty-ninth day of April,
A. D. 1920, from which judgment the defendants French
and Hendricks appeal.

The transcript shows that on or about the twentieth day
of April, 1920, the defendant J. D. French sold and trans-
ferred to Guy S. Higgins and Ashley E. Higgins a certain
band of goats comrising about 1,400 head and a certain tract
of land covering about 160 acres, all in the county of
Tehama, state of California; that the total selling price of
said property was the sum of $9,000; that $2,707 of the sell-
ing price of said property was unpaid and to secure the
payment of the same by the said Guy S. Higgins and Ashley
E. Higgins to the said J. D. French, Guy S. Higgins, Ashley
E. Higgins, Mary A. Higgins, and Delia M. Higgins,

executed and delivered to the defendant J. D. French a certain promissory note in the sum of $2,707, payable on or before three years after date, and to secure the payment of said note the said Guy S. Higgins and Ashley E. Higgins executed and delivered a chattel mortgage upon all of the goats hereinbefore referred to and a mortgage covering the real estate theretofore sold by the said J. D. French to said Higgins, the real estate mortgage being executed by all of the signers to the promissory note hereinbefore mentioned.

That after the execution of the instruments herein referred to the defendant Guy S. Higgins executed and delivered to the plaintiff A. J. Pine a certain chattel mortgage, bearing date of the twenty-ninth day of April, 1920, covering the band of goats mentioned in the mortgage, just mentioned as executed and delivered to the defendant J. D. French. This chattel mortgage was executed and delivered first to secure the payment of a certain promissory note for $156, dated March 29, 1920, payable one day after date, executed and delivered by the defendant Guy S. Higgins to the plaintiff. Said mortgage executed and delivered by the said Guy S. Higgins to the plaintiff A. J. Pine and for the foreclosure of which the decree was entered in this case also contained the following provision:

"And also to secure the payment of all future loans, balances of account, other indebtedness or advances made by the mortgagee to the mortgagor, not to exceed for the principal secured of such loans or advances the sum of Eight Hundred and 00/100 Dollars."

The complaint in the action alleges that after the execution of the mortgage just referred to the plaintiff sold and delivered to the defendant Guy S. Higgins of Red Bluff, Tehama County, goods, wares, and merchandise amounting to the sum of $806.77; that the last of said advances was made on the thirtieth day of April, 1921. Nonpayment of the note and the advances is alleged.

The transcript further shows that the instruments herein referred to were all recorded in the county recorder's office of the county of Tehama. Thereafter, and on or about the nineteenth day of October, 1921, for the purpose of satisfying the indebtedness mentioned in the promissory note executed and delivered by Guy S. Higgins, Ashley E. Higgins, Mary A. Higgins, and Delia M. Higgins, Guy S. Higgins

and Ashley E. Higgins executed and delivered a deed con-
veying the real property included in the real estate mortgage
hereinbefore referred to, and, also, turned over to the de-
fendant French all of the band of goats theretofore bought
by the said Higgins from the defendant French, and in-
cluded in the chattel mortgage executed to pay the $2,707
note, and upon said reconveyance of said real estate being
made and redelivery of said band of goats, the said J. D.
French satisfied both the chattel and real estate mortgages
theretofore given to him by the Higginses to secure the un-
paid portion of the purchase price of said property; that no
foreclosure sale was had, nor was any sale had of any of
said property under the mortgages executed and delivered
by the Higginses to the defendant French, and the property
was turned back to him in the manner above stated; that at
a period of time about one and one-half years after the
real estate referred to had been reconveyed to the defendant
French and the band of goats redelivered to him, the de-
fendant French sold and conveyed to the defendant Floyd
E. Hendricks the real estate referred to herein, and also
all that was remaining of the band of goats redelivered by
the Higginses to the defendant French, and the increase
thereof during the period of time said goats were in the
possession of the said French.  After these transactions had
taken place the plaintiff began this action to foreclose the
chattel mortgage on the band of goats referred to, executed
and delivered to him solely by Guy S. Higgins.  Guy S.
Higgins made default and judgment went against the de-
fendants French and Hendricks for foreclosure of the mort-
gage and sale of the band of goats.

The transcript contains testimony to the effect and the
court found that the advances made under the chattel
mortgage executed to the plaintiff by Guy S. Higgins alone
consisted of an account made up of the selling prices of
goods, wares, and merchandise used by the defendant Guy
S. Higgins and his family and Ashley E. Higgins and his
family during the time they had possession of and were
caring for said band of goats, and in the caring for and
"running of the same."  There is also testimony to the effect
that the defendant J. D. French knew of the execution of
the second mortgage of the alleged purposes for which it
was executed, and consented thereto, and the court found

that the defendant French knew thereof and consented thereto. The court also found that at the time the defendant French became repossessed of the property herein referred to without any foreclosure sale, the value of the property was sufficient to cover not only the indebtedness then due to him, but, also, the indebtedness evidenced by the mortgage executed and delivered to the plaintiff by Guy S. Higgins.

There is, however, not a scintilla of evidence in the transcript showing that the defendant Floyd E. Hendricks knew of any of the transactions had between the parties referred to, or of the purposes for which the mortgage was given, other than such constructive notice as is conveyed to a subsequent purchaser by the record of plaintiff's mortgage herein mentioned.

As to the existence of a partnership between Guy S. Higgins and Ashley E. Higgins, the transcript shows the following:

(Testimony of the witness A. J. Pine.)

"Q. You understood that Guy Higgins and A. E. Higgins were partners in the business out there? A. Not exactly partners, no. They put their goats together and had one camp. Q. And they were running the bands together as one band? A. Yes, and he had it put under that name (Guy Higgins) so he would join in and help pay it—help pay for the merchandise."

(Testimony of Guy S. Higgins.)

"Q. How did you arrange with Mr. Pine for the account—how were they to be charged? A. Under the name of A. E. and G. S. Higgins. Q. You made those arrangements with Mr. Pine yourself? A. Yes, sir. Q. And when you opened this account at Mr. Pines, you opened that account as the account for this business of your brother and yourself? A. Yes, sir. Q. And in which you say you intended and agreed to share the profits equally and the losses equally? A. Yes, sir. Q. And that account was not your individual account? A. No sir."

(Testimony of Ashley E. Higgins.)

"Q. When you opened the account at Mr. Pines it was a partnership account, wasn't it? A. Yes sir. Q. The groceries bought there were used in the partnership business

for your family, and for your brother's family, while you resided out there running the goats? A. Yes sir."

Upon this testimony the court found that Guy S. Higgins and Ashley E. Higgins were partners in the goats and the land hereinbefore referred to. The court also found that at the time the mortgage on the goats in question was given by Guy S. Higgins to the plaintiff, Guy S. Higgins and Ashley E. Higgins were the owners of the goats described therein.

[1] In none of the conveyances herein referred to was the property described as purchased for a partnership, or by a partnership, or mortgaged as a partnership, or reconveyed to the defendant French as partnership property, and while the testimony may be sufficient to show a partnership in the use of the property as between Guy S. Higgins and Ashley E. Higgins and as to the plaintiff A. J. Pine, it is absolutely insufficient to sustain any such finding as to the defendant Floyd E. Hendricks. The record of which the defendant Floyd E. Hendricks must be held to have had constructive notice shows only a cotenancy or tenancy in common, both as to the band of goats and the real estate mentioned in the conveyances. Oral testimony as to any other matters cannot be considered in the determination of the rights of the defendant Floyd E. Hendricks in and to the band of goats purchased by him from the defendant French for the reason that there is not a scintilla of evidence in the record, as we have said, showing that the defendant Floyd E. Hendricks had any knowledge whatever of any of the transactions now appearing in the record. The trial seems to have been had and the findings made upon the theory that if the seller of the goats had knowledge the purchaser was chargeable also with such knowledge. It requires no citation of authority to controvert such a conclusion.

As said in 5 California Jurisprudence, page 56, section 14: "Though there are no provisions in the codes which expressly make the recordation of a valid chattel mortgage constructive notice of its contents, yet it is well settled that such recordation is notice to all the world of the contents of the mortgage, and consequently subsequent purchasers and encumbrancers take subject to the lien of the mortgage since they are charged with notice thereof," citing a num-

ber of cases. The same section also contains the rule well supported by authority that the *"record imparts constructive notice only of what the mortgage contains."*

The mortgage executed by Guy S. Higgins to the plaintiff does not upon its face purport to be anything but his individual mortgage. It does not purport to mortgage partnership property. It does expressly, however, purport to secure the payment of an individual note of Guy S. Higgins due at the date of the execution of the mortgage and advances that might be made to him. In this particular we may state that the advances made by Pine to Guy S. Higgins were not made by Pine under a view that Guy S. Higgins and Ashley E. Higgins were partners. They were advanced to Guy S. Higgins and Ashley E. Higgins as two persons running their goats together. Under such circumstances, the advances made to Guy S. Higgins the court might properly find as advances contemplated and included within the terms of the mortgage.

As we have said, the court found ownership of the goats at the time the chattel mortgage was executed and delivered to the plaintiff to be in Guy S. Higgins and Ashley E. Higgins, from which, under the circumstances which we have set forth, and the terms of the mortgage, mortgaged only the interest of Guy S. Higgins. The record is silent as to the extent of that interest.

[2] The finding of the court that the value of the property at the time it was redelivered to the defendant French was sufficient to cover the indebtedness to him and, also, the indebtedness to the plaintiff is attacked as not being supported by the testimony. The only testimony there is in the record is to the effect that the property was once sold to the Higginses for $9,000 and subsequently sold to the defendant Floyd E. Hendricks for $4,000. This testimony having been admitted without objection, we think, sustains the finding of the court. As there is nothing in the record showing the extent of the interest of Guy S. Higgins at the time of the execution and delivery of the chattel mortgage on the band of goats to the plaintiff, we have nothing upon which to base an order directing a modification of the judgment, and as the judgment directs the sale of the band of goats as though it were partnership property, and property mortgaged as a whole against the defendant Floyd E. Hen-

dricks, the rights of the parties can only be determined by sending the case back to the trial court for further consideration and determination of the extent of the interest of Guy S. Higgins actually mortgaged, and to direct foreclosure and sale of such interest. The judgment of foreclosure is reversed and the trial court directed to proceed further in the case in accordance with this opinion.

Thompson, J., *pro tem.*, and Finch, P. J., concurred.